## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK; STATE OF CONNECTICUT; STATE OF DELAWARE; COMMONWEALTH OF MASSACHUSETTS; STATE OF NEW JERSEY; and the CITY OF NEW YORK,<br><br>*Plaintiffs,*<br><br>v.<br><br>ANDREW R. WHEELER, in his official capacity as Administrator of the United States Environmental Protection Agency; and the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br>*Defendants.* | Civil No.: 1:21-cv-252<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br><br>**(Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*)** |

Plaintiffs New York, Connecticut, Delaware, Massachusetts, New Jersey, and the City of New York (collectively, Plaintiff States) allege as follows:

### INTRODUCTION

1.     Plaintiff States sue for declaratory and injunctive relief through the citizen suit provision of the Clean Air Act (Act) against Andrew R. Wheeler, in his official capacity as Administrator of the United States Environmental Protection Agency, and against the United States Environmental Protection Agency (together, EPA). For years, Plaintiff States have struggled to attain and maintain the federal air quality standards for ozone, a pollutant that harms people and ecosystems and is the principal component of "smog." Plaintiff States' struggles are due in large part to

the excessive amounts of ozone pollution that are emitted by sources in upwind States and carried by prevailing winds into Plaintiff States. The Act requires upwind States to submit to EPA, for approval or disapproval within a statutorily mandated timeframe, plans that fully eliminate those unlawful quantities of pollution being transported downwind. And if EPA disapproves an upwind States' plan as deficient, that determination triggers EPA's duty to craft a federal plan for that State within a set timeframe. By failing to timely act on a number of plans submitted by upwind States, EPA is disregarding its mandatory duty and harming Plaintiff States that are entitled to relief under the Good Neighbor Provision.

2.      Plaintiff States ask the Court to order EPA to carry out the agency's mandatory statutory duty to approve or disapprove state implementation plans (SIPs) submitted by Indiana, Kentucky, Michigan, Ohio, Texas, and West Virginia (Upwind States) under 42 U.S.C. § 7410(a)(2)(D)(i)(I), known as the "Good Neighbor Provision," for the 2015 ozone national ambient air quality standards (NAAQS). This complaint refers to the portions of the Upwind States' SIPs that were submitted to EPA pursuant to the Good Neighbor Provision for the 2015 ozone NAAQS (and are the subject of EPA's overdue action here) as "Good Neighbor SIPs."

3.      EPA has not made the required determinations approving or disapproving these Good Neighbor SIPs within 12 months of their being determined or deemed complete, as required by the Act. 42 U.S.C. § 7410(k)(2) & (3).

4.      As a result, EPA is subject to suit under the Act and may be enjoined to comply with its mandatory duty.

5.     To protect the public from unhealthy ozone levels, in 2015 EPA published revised NAAQS for ozone, setting more stringent benchmarks for allowable ambient ozone pollution, which every State must attain (and thereafter maintain) by deadlines set in the Act. 80 Fed. Reg. 65,292 (Oct. 26, 2015). The New York-Northern New Jersey-Long Island, NY-NJ-CT metropolitan area (New York Metropolitan Area), which encompasses nine counties in New York (including all of New York City), twelve counties in New Jersey and three counties in Connecticut, faces an attainment deadline in August 2024, based on air quality measured in 2021, 2022 and 2023. The Philadelphia-Wilmington-Atlantic City, PA-NJ-MD-DE metropolitan area (Philadelphia Metropolitan Area), which includes portions of plaintiffs Delaware and New Jersey, and the Greater Connecticut Area, which includes five Connecticut counties not in the New York Metropolitan Area, both face attainment deadlines in 2021, based on air quality measured in 2018, 2019 and 2020.

6.     Air pollution from each of the Upwind States significantly contributes to nonattainment of the 2015 ozone NAAQS, or interferes with maintenance of the 2015 ozone NAAQS, in one or more of the Plaintiff States. Therefore, the Plaintiff States need either fully complaint Upwind State Good Neighbor SIPs approved and in place, or if the Upwind States' Good Neighbor SIPs are deficient, disapproval by EPA triggering EPA's obligation to promulgate backstop federal implementation plans (FIPs) within two years to prevent excessive ozone pollution from these Upwind States. *See* 42 U.S.C. § 7410(c)(1).

7.    Time is of the essence for the Plaintiff States: EPA's failure to take immediate action to ensure the Upwind States cut air pollution will both prolong harms to the health of our residents from high ozone levels and foreclose the ability of certain Plaintiff States to demonstrate attainment of the 2015 ozone NAAQS by their statutory attainment deadlines. Notably, compliance with the New York Metropolitan Area's upcoming statutory attainment deadline will be determined in part by average ozone measurements for the 2021 ozone season, which will begin in a few short weeks.

8.    Plaintiff States ask the Court to find that EPA violated the Act when it failed, within the Act's 12-month timeframe, to approve or disapprove each Upwind State's Good Neighbor SIP—the portions of each Upwind State's SIP purporting to fulfill that State's Good Neighbor Provision obligations—for the 2015 ozone NAAQS.

9.    The Court should order EPA to take final action approving or disapproving each of the Upwind States' Good Neighbor SIPs by a date certain.

10.    Plaintiff States also seek all available litigation costs, including reasonable attorneys' fees, under section 304(d) of the Act, 42 U.S.C. § 7604(d).

## JURISDICTION

11.    This Court has subject matter jurisdiction over this action pursuant to section 304(a)(2) of the Act, 42 U.S.C. § 7604(a)(2), which authorizes any person, after due notice, to sue to compel the performance of a nondiscretionary duty under the Act.

12.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1361 (suits to compel officer or agency actions).

## NOTICE

13.     In satisfaction of section 304(b) of the Act, 42 U.S.C. § 7604(b), and 40 C.F.R. part 54, Plaintiff States sent notice to EPA on September 17, 2020, of their intention to file suit for EPA's failure to perform the nondiscretionary duties described here. A copy of the notice letter is attached as Exhibit 1.

14.     The statutory 60-day notice period has now expired without action by EPA.

## VENUE

15.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(e) because this suit names an agency of the United States and an officer of the United States acting in his official capacity, and a substantial part of the events or omissions giving rise to the Plaintiff States' claims occurred in this judicial district.

16.     EPA's failure to approve or disapprove the Good Neighbor SIPs prolongs the risk of harm from high ozone levels to millions of residents in each of the Plaintiff States and hinders attainment and maintenance of the 2015 ozone NAAQS in areas including without limitation, in the New York Metropolitan Area, which includes New York counties located in this judicial district.

## PARTIES

17.     Plaintiff States—sovereign States and the City of New York—bring this action on behalf of their residents and on their own behalf to protect their respective

interests as administrators of healthcare programs and schools, as employers, and as regulators and sovereigns responsible for protecting and preserving natural resources held in trust.

18.     Plaintiff States are all "persons" defined by section 302(e) of the Act, 42 U.S.C. § 7602(e).

19.     EPA is the federal agency charged with implementing the Act.

20.     Andrew R. Wheeler is the Administrator of EPA and is sued in his official capacity.

21.     As a result of EPA's failure to timely regulate upwind ozone pollution, Plaintiff States have suffered and will continue to suffer harm from the interstate transport of air pollution. Sources of air pollution in each of the Upwind States cause air quality problems within the Plaintiff States, and those upwind sources significantly contribute to nonattainment and maintenance problems for the 2015 ozone NAAQS in areas within Plaintiff States' jurisdictions to the detriment of the health and welfare of our residents.

22.     If EPA does not require Upwind States to timely reduce their emissions as the law requires, certain downwind Plaintiff States will be unable to come into attainment by the upcoming statutory deadlines for attaining clean air, which will trigger even more stringent and costly regulatory obligations for those Plaintiff States.

## STATUTORY BACKGROUND

23.     The Clean Air Act seeks  to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). EPA's establishment of NAAQS is one of the principal means of addressing the most common pollutants such as ozone. Establishment and implementation of the ozone NAAQS relies on cooperative partnership between federal, State and local governments. *See, e.g.,* 42 U.S.C. § 7402(a) (describing the EPA Administrator's responsibility to encourage "cooperative activities" by the States and local governments as well as Federal departments and agencies to prevent and control air pollution).

24.     Sections 108 and 109 of the Act require EPA to establish and periodically revise NAAQS that reflect the maximum allowable ambient air concentrations for certain pollutants.  42 U.S.C. §§ 7408-7409.  The NAAQS must be set at levels that are protective of public health and public welfare.  *Id.* § 7409(b).

25.     States have primary responsibility for ensuring that air quality within their borders meets these standards.  *See* 42 U.S.C. § 7410(a). Within three years of EPA promulgating a new or revised ozone NAAQS, each State must submit a SIP that provides for the "implementation, maintenance, and enforcement" of the NAAQS by statutory attainment deadlines.  *Id.* § 7410(a)(1). These plans are often referred to as "Infrastructure" SIPs.

26.     An Infrastructure SIP must meet the requirements of 42 U.S.C. § 7410(a)(2), including the requirements of the Good Neighbor Provision. The Good Neighbor Provision requires that each State's Infrastructure SIP contain adequate

provisions to prohibit sources within the State from emitting air pollution in amounts that will "contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any [NAAQS]."  42 U.S.C. § 7410(a)(2)(D)(i)(I).

27.    The Act requires EPA to determine whether each State has submitted an administratively complete SIP, including an Infrastructure SIP, "no later than 6 months after the date, if any, by which a State is required to submit the plan or revision." 42 U.S.C. § 7410(k)(1)(B).

28.    If a State fails to submit any required element of a SIP, including provisions that ensure the State's compliance with the Good Neighbor Provision, that State's SIP is deemed incomplete and EPA has a non-discretionary duty to make a determination that the State failed to submit the required SIP. *Id.*

29.    Conversely, when a State submits a SIP, the Administrator must determine that it is complete or incomplete.

30.    Where the Administrator does not make any such affirmative determination by six months after the date of submission, the SIP "shall on that date be deemed by operation of law to meet such minimum criteria." *Id.* § 7410(k)(1)(B).

31.    Once an Infrastructure SIP submission is complete (either by EPA determination or by operation of law), EPA must approve or disapprove the SIP within 12 months. *See* 42 U.S.C. § 7410(k)(2) ("[w]ithin 12 months of a determination by the Administrator (or a determination deemed by operation of law) . . . the Administrator *shall act* on the submission in accordance with paragraph (3)" (emphasis added)).

32.    The Administrator's action must consist of either an approval (in whole or in part) or disapproval (in whole or in part) of the SIP, but "[t]he plan revision shall not be treated as meeting the requirements of this chapter until the Administrator approves the entire plan revision as complying with the applicable requirements of this chapter." *Id.* § 7410(k)(3).

33.    When EPA approves a SIP that fully complies with the Good Neighbor Provision, the SIP's requirements take effect, ensuring that an Upwind State controls its in-state sources' emissions as required by the Good Neighbor Provision.

34.    If EPA disapproves a Good Neighbor SIP, that determination establishes a two-year deadline for EPA to promulgate a FIP ensuring that the State comes into compliance with the Good Neighbor Provision, unless the State submits a complete and approvable Good Neighbor SIP in the interim. *Id.* § 7410(c)(1)(B).

35.    In implementing prior ozone standards, such as the 2008 ozone NAAQS, EPA has issued FIPs for many of the Upwind States because EPA disapproved their Good Neighbor SIPs or found that States failed to submit SIPs fully complying with the Good Neighbor Provision. *See, e.g.*, Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 81 Fed. Reg. 74,504, 74,514 (Oct. 26, 2016) (CSAPR Update); *see also* Revised Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 85 Fed. Reg. 68,964, 68,974 (Oct. 30, 2020) (Proposed Revised CSAPR Update).

## FACTUAL BACKGROUND

36.    Ground-level ozone is not emitted directly into the air, but is a secondary air pollutant that forms when other atmospheric pollutants, known as ozone

"precursors," such as nitrogen oxides (NOx) and volatile organic compounds (VOCs), react in the presence of sunlight. 80 Fed. Reg. at 65,299.

37.     EPA has found significant negative health effects in individuals exposed to elevated levels of ozone, including coughing, throat irritation, lung tissue damage, and aggravation of existing conditions, such as asthma, bronchitis, heart disease, and emphysema. *Id.* at 65,302-11. Exposure to ozone has also been linked to premature mortality. *Id.* Some subpopulations face elevated risks from exposure to ozone pollution, including children, the elderly, and those with existing lung diseases, such as asthma. *Id.*

38.     People of color and those living below the federal poverty standard disproportionately bear the consequences of ozone pollution. Under Executive Order 12,898, 59 Fed. Reg. 7,629 (Feb. 16, 1994), EPA must identify and address disproportionate human health or environmental effects of its activities on populations of color and low-income populations. EPA has previously acknowledged that these populations are likely to face greater risk of adverse ozone-related health impacts due to higher rates of asthma. 85 Fed. Reg. 49,830, 49,850 (Aug. 14, 2020).

39.     For decades, EPA has known that formation and transport of ozone occurs on a regional scale over much of the eastern United States. Pollution from sources located in multiple upwind States contributes to high ozone levels in downwind States, such as Plaintiff States. In large part due to the substantial quantities of ozone pollution transported from upwind areas, many eastern States, including Plaintiff States, have faced decades-long challenges in attaining clean air.

40. EPA has determined that many of these downwind States cannot attain the NAAQS without reductions in the "interstate transport" of ozone precursor pollution from upwind sources. *See, e.g.,* CSAPR Update, 81 Fed. Reg. at 74,514; *see also* Proposed Revised CSAPR Update, 85 Fed. Reg. at 68,974. And for those downwind areas that have been able to come into attainment, reductions in emissions from upwind sources remain critical to ensuring their ability to maintain compliance, as demonstrated by continued exceedances of the ozone standard on certain high ozone days even after attainment designations.

41. In 2015, based on updated scientific information about the health risks of ozone at lower concentrations, EPA revised the ozone NAAQS, setting the primary and secondary standards at 70 parts per billion. 80 Fed. Reg. at 65,292. EPA promulgated the 2015 ozone NAAQS on October 1, 2015. *See, e.g.*, 83 Fed. Reg. 62,998 (Dec. 6, 2018) (EPA implementation rule stating that the 2015 ozone NAAQS "were promulgated on October 1, 2015").

42. According to EPA, the Upwind States have submitted Good Neighbor SIPs; i.e., Infrastructure SIPs that purport to fulfill their Good Neighbor Provision obligations for the 2015 ozone NAAQS as required under section 110(a)(2)(D) of the Act.[1] Yet, even though more than 12 months have passed since these Good Neighbor

---

[1] *See* EPA, National Status of a 110(a)(2) Ozone (2015) SIP Infrastructure Requirement, Requirement: Section 110(a)(2)(D)(i) – I Prong 1: Interstate Transport – significant contribution, https://www3.epa.gov/airquality/urbanair/sipstatus/reports/x110_a__2__ozone__2015_section_110_a__2__d__i__-_i_prong_1__interstate_transport_-_significant_contribution_inbystate.html (last visited Jan. 12, 2021); *and*

SIP submissions were respectively either determined or deemed complete, EPA has not issued the required approval or disapproval for these Good Neighbor SIPs, as required by the Act. *See* 42 U.S.C. §§ 7410(k)(2) & (3).

43. Specifically, Texas's SIP submission was determined or deemed complete on March 12, 2019 with respect to its Good Neighbor Provision obligations under the 2015 ozone NAAQS (i.e., Section 110(a)(2)(D)(i) - I Prong 1: Interstate transport - significant contribution, and Section 110(a)(2)(D)(i) - I Prong 2: Interstate transport - interfere with maintenance).[2] Therefore, EPA had a statutory deadline of March 12, 2020 to approve or disapprove these portions of Texas's SIP. EPA did not approve or disapprove of these portions of Texas's SIP by the deadline, and still has not done so.

44. West Virginia's SIP submission was determined or deemed complete on March 14, 2019 with respect to its Good Neighbor Provision obligations under the 2015 ozone NAAQS (i.e., Section 110(a)(2)(D)(i) - I Prong 1: Interstate transport - significant contribution, and Section 110(a)(2)(D)(i) - I Prong 2: Interstate transport - interfere with maintenance).[3] Therefore, EPA had a statutory deadline of March 14, 2020 deadline to approve or disapprove these portions of West Virginia's SIP. EPA

---

EPA, National Status of a 110(a)(2) Ozone (2015) SIP Infrastructure Requirement, Section 110(a)(2)(D)(i) - I Prong 2: Interstate transport - interfere with maintenance,
https://www3.epa.gov/airquality/urbanair/sipstatus/reports/x110_a__2__ozone__2015_section_110_a__2__d__i__-_i_prong_2__interstate_transport_-_interfere_with_maintenance_inbystate.html (last visited Jan. 12, 2021).

[2] *Id.*

[3] *Id.*

did not approve or disapprove of these portions of West Virginia's SIP by the deadline, and still has not done so.

45.     Ohio's SIP submission was determined or deemed complete on March 28, 2019 with respect to its Good Neighbor Provision obligations under the 2015 ozone NAAQS (i.e., Section 110(a)(2)(D)(i) - I Prong 1: Interstate transport - significant contribution, and Section 110(a)(2)(D)(i) - I Prong 2: Interstate transport - interfere with maintenance).[4] Therefore, EPA had a statutory deadline of March 28, 2020 to approve or disapprove these portions of Ohio's SIP. EPA did not approve or disapprove of these portions of Ohio's SIP by the deadline, and still has not done so.

46.     Indiana's SIP submission was determined or deemed complete on May 2, 2019 with respect to its Good Neighbor Provision obligations under the 2015 ozone NAAQS (i.e., Section 110(a)(2)(D)(i) - I Prong 1: Interstate transport - significant contribution, and Section 110(a)(2)(D)(i) - I Prong 2: Interstate transport - interfere with maintenance).[5] Therefore, EPA had a statutory deadline of May 2, 2020 to approve or disapprove these portions of Indiana's SIP. EPA did not approve or disapprove of these portions of Indiana's SIP by the deadline, and still has not done so.

47.     Kentucky's SIP submission was determined or deemed complete on July 9, 2019 with respect to its Good Neighbor Provision obligations under the 2015 ozone NAAQS (i.e., Section 110(a)(2)(D)(i) - I Prong 1: Interstate transport - significant

---

[4] *Id.*

[5] *Id.*

contribution, and Section 110(a)(2)(D)(i) - I Prong 2: Interstate transport - interfere with maintenance).[6] Therefore, EPA had a statutory deadline of July 9, 2020 to approve or disapprove these portions of Kentucky's SIP. EPA did not approve or disapprove of these portions of Kentucky's SIP by the deadline, and still has not done so.

48.    Michigan's SIP submission was determined or deemed complete on September 8, 2019 with respect to its Good Neighbor Provision obligations under the 2015 ozone NAAQS (i.e., Section 110(a)(2)(D)(i) - I Prong 1: Interstate transport - significant contribution, and Section 110(a)(2)(D)(i) - I Prong 2: Interstate transport - interfere with maintenance).[7] Therefore, EPA had a statutory deadline of September 8, 2020 to approve or disapprove these portions of Michigan's SIP. EPA did not approve or disapprove of these portions of Michigan's SIP by the deadline, and still has not done so.

49.    EPA has not yet completed its mandatory duty to approve or disapprove the Good Neighbor SIPs submitted by each of the Upwind States related to significant contribution or interference with maintenance for the 2015 ozone NAAQS.[8]

---

[6] *Id.*

[7] *Id.*

[8] After the Notice of Intent to Sue letter was sent in September 2020, EPA also missed deadlines to approve or disapprove Infrastructure SIPs addressing the Good Neighbor Provision for the 2015 ozone NAAQS for Maryland by October 24, 2020 and Illinois by November 21, 2020, and still has not done so.

50.    Therefore, the agency is in violation of the Act for its failure to timely perform those nondiscretionary duties with respect to the Good Neighbor SIPs submitted by the Upwind States.

## HARM TO PLAINTIFF STATES FROM EPA'S FAILURE TO COMPLY WITH ITS MANDATORY STATUTORY DUTY

51.    Emissions from each of the Upwind States contribute significantly to problems attaining or interfere with maintenance of the 2015 ozone NAAQS in areas within the Plaintiff States.

52.    For ozone, the Act classifies nonattainment areas based on how far out of attainment or how persistent the area's nonattainment is. 42 U.S.C. § 7511(a). The classifications are Marginal, Moderate, Serious, Severe, and Extreme. 42 U.S.C. §7511(a).

53.    Areas designated as "nonattainment" are required to attain the new primary standard "as expeditiously as practicable but not later than" dates set forth in the Act based on the area's classification. *Id.* The further from attainment that an area is, the more time it has to come into compliance. Following EPA's promulgation of the 2015 ozone NAAQS, EPA designated the New York Metropolitan Area as a nonattainment area with a moderate classification.[9] The Philadelphia Metropolitan Area and Greater Connecticut Area were each classified as marginal nonattainment areas.

---

[9] 83 Fed. Reg. 25,776, 25,821 (Jun. 4, 2018).

54.     Even outside of these formally designated nonattainment areas, ozone monitors in other locations within the Plaintiff States continue to measure unhealthy ozone levels that exceed the standard.[10]

55.     Air quality modeling demonstrates that the high concentrations of ozone measured in these densely-populated downwind regions are, in significant measure, the result of emissions from major stationary sources of NOx located outside and upwind of each State, including in the Upwind States.

56.     Even as many of the Upwind States have done little to control emissions from sources within their borders, Plaintiff States have long been involved in substantial efforts to reduce emissions from in-state sources of NOx and to mitigate the regional transport of NOx. Many Plaintiff States have cut ozone precursor emissions year after year to meet and exceed "reasonable further progress" targets mandated by 42 U.S.C. § 7511a, including by requiring in-state sources to meet a variety of stringent emissions standards and comply with NOx Reasonably Available Control Technology (RACT).

57.     Plaintiff States have also implemented stringent emissions control measures related to mobile sources, and participate in the Ozone Transport Commission, which developed the first NOx Budget Program that dramatically reduced ozone transport within the Ozone Transport Region. Plaintiff States also

---

[10] For example, in 2019 and 2020, monitors at Lynn and Martha's Vineyard, Massachusetts, registered numerous exceedances of the 2015 ozone NAAQS. *See* EPA, Region 1: New England, https://www3.epa.gov/region1/airquality/ ma_over.html.

have each participated in one or more of the multiple iterations of federal NOx Budget trading programs, including the 2005 Clean Air Interstate Rule (CAIR), 70 Fed. Reg. 25,162 (May 12, 2005); 2011 Cross-State Air Pollution Rule (CSAPR), 76 Fed. Reg. 48,208 (Aug. 8, 2011); and 2016 CSAPR Update; 81 Fed. Reg. at 74,504 .

58.     While EPA has failed to timely take the actions required by the Act to remedy ongoing ozone problems, the agency's own modeling projects that emissions from sources in the Upwind States will continue to cause downwind air quality problems in the years ahead. For example, EPA projects that even in 2023, the New York Metropolitan Area is likely to remain in nonattainment of the 2015 ozone NAAQS.[11] Further, EPA's modeling projects that each of the Upwind States individually will still be contributing ozone precursors to downwind nonattainment or maintenance problems in amounts that exceed the EPA-selected screening level for determining whether a contribution is "significant" under the Good Neighbor Provision in one or more of the Plaintiff States' nonattainment or maintenance areas in future years, such as the 2021 and 2023 ozone seasons.[12] Indeed, in the Proposed

---

[11] *See* 84 Fed. Reg. 56,058, 56,080-81 (Oct. 18, 2019); *see also State of New York v. EPA*, 964 F.3d 1214, 1220 (D.C. Cir. 2020) ("The EPA agreed with New York . . . that the New York Metropolitan Area would likely be in nonattainment of the 2015 NAAQS in 2023.").

[12] *See* EPA, 2015 Ozone NAAQS Interstate Transport Assessment Design Values and Contributions (rev. May 2018), *available at* https://www.epa.gov/airmarkets/memo-and-supplemental-information-regarding-interstate-transport-sips-2015-ozone-naaqs; *see* EPA, Ozone Design Values & Contributions Proposed Revised CSAPR Update, Attachment 5 to Air Quality Modeling TSD for the Proposed Revised Cross-State Air Pollution Rule Update, Doc. No. EPA-HQ-OAR-2020-0272-0064_attachment_5,"2023 DVs and Contributions Tab," *available at* https://www.regulations.gov/document?D=EPA-HQ-OAR-2020-0272-0064.

Revised CSAPR Update, EPA projected that even with the additional emissions reductions proposed for certain of the Upwind States in the 2021 through 2024 ozone seasons, significant contribution to nonattainment and interference with maintenance of the *less-stringent* 75 ppb 2008 ozone NAAQS would persist in the New York Metropolitan Area through the 2024 ozone season. 85 Fed. Reg. at 69,008, 68,969.

59.    EPA's failure to timely act to approve or disapprove Upwind States' Good Neighbor SIPs for the 2015 ozone NAAQS is a clear breach of EPA's statutory duty. EPA's failure harms the public health and welfare of millions of residents in the Plaintiff States.

60.    Plaintiff States have a sovereign duty and responsibility to protect the health and welfare of our residents and the quality of our environment. Yet in large part because of ozone generated and transported from Upwind States—areas where the Plaintiff States lack any direct authority to reduce emissions—our residents continue to breathe unhealthy air.

61.    Until EPA approves or disapproves the Upwind States' Good Neighbor SIPs, Plaintiff States are denied the relief provided by the Good Neighbor Provision, either through compliant Good Neighbor SIPs or EPA-issued FIPs, and may face delays in being able to challenge any deficiencies in Good Neighbor SIPs or FIPs.

62.    EPA's failure to comply with its non-discretionary duties also places unfair economic and administrative burdens on many of the Plaintiff States, which are required to timely meet our attainment obligations under the Act or face punitive

consequences. For example, the New York Metropolitan Area, designated by EPA as a "moderate" nonattainment area, has an attainment deadline of August 3, 2024.[13] Attainment must be demonstrated based on air quality readings measured in the three-year period beginning in March 2021, only a few weeks from now. Preliminary ozone readings in the 2020 ozone season show that the New York Metropolitan Area needs significant relief from ozone precursor pollution transported from the Upwind States as expeditiously as practicable. Without significant reductions in upwind, out-of-state pollution in the 2021 ozone season and the subsequent years used to determine attainment by the 2024 deadline, the New York Metropolitan Area may be reclassified (i.e. be downgraded in air quality rating) to "serious" nonattainment status and be required to implement additional emission reductions for in-state sources. *See* 42 U.S.C. § 7511(b)(2).

63. The Philadelphia Metropolitan Area and Greater Connecticut attainment deadlines are even sooner: 2021.[14] Certified ozone data from 2018 and 2019 show numerous exceedances of the ozone standards, and preliminary ozone readings in the 2020 ozone season show that, despite Delaware, New Jersey and Connecticut's successes in cutting in-state emissions, those areas still will likely not attain by 2021 and may be reclassified (i.e. downgraded in air quality rating) to "moderate" nonattainment status. *See* 42 U.S.C. § 7511(b)(2). Reclassification would

---

[13] *See* EPA, Fact Sheet – Final Area Designations for the National Ambient Air Quality Standards for Ozone Established in 2015 at 7, *available at*: https://www.epa.gov/sites/production/files/2018-04/documents/placeholder_0.pdf.

[14] *Id.*

therefore trigger additional control measures by the affected Plaintiff States, and further heighten the need to have in place fully compliant Good Neighbor SIPs or FIPs for the Upwind States.

64.     EPA has recognized that requiring downwind areas to plan for attainment and maintenance before requiring upwind reductions is contrary to the Act's statutory structure and places an "inequitable burden" on downwind areas. 81 Fed. Reg. at 74,516. For example, in the 2016 CSAPR Update, EPA stated that "[i]f states or the EPA waited until Moderate area attainment plans were due before requiring upwind reductions, then these upwind reductions would be delayed several years beyond the mandatory CAA schedule. Further, the CAA implementation timeline implies that requiring local reductions first would place an inequitable burden on downwind areas by requiring them to plan for attainment and maintenance without any upwind actions." *Id.*; *see also Wisconsin v. EPA,* 938 F.3d 303, 315 (D.C. Cir. 2019); *New York v. EPA*, 781 F. App'x 4, 6-7 (D.C. Cir. 2019); *North Carolina v. EPA*, 531 F.3d 896, 911-12 (D.C. Cir. 2008).

## CLAIM FOR RELIEF

(Failure to Perform a Nondiscretionary Duty
Pursuant to 42 U.S.C. § 7410(k)(2) & (3))

65.     Plaintiff States re-assert and re-allege paragraphs 1 through 64 above.

66.     Indiana, Kentucky, Michigan, Ohio, Texas, and West Virginia have submitted Good Neighbor SIPs that purport to address excessive interstate pollution transport from their in-state sources, as required under section 110(a)(1) of the Act,

including the Good Neighbor Provision of the Clean Air Act, 42 U.S.C. § 7410(a)(2)(D)(i)(I) for the 2015 ozone NAAQS.

67.     EPA has a mandatory statutory duty to approve or disapprove these Good Neighbor SIPs within 12 months of their being determined or deemed complete. 42 U.S.C. § 7410(k)(2) & (3).

68.     More than 12 months ago, either EPA determined each of these Good Neighbor SIPs from Indiana, Kentucky, Michigan, Ohio, Texas, and West Virginia were complete or they were deemed complete by operation of law.

69.     EPA had a statutory deadline of March 12, 2020 to approve or disapprove Texas's Good Neighbor SIP, a March 14, 2020 deadline for West Virginia's Good Neighbor SIP, a March 28, 2020 deadline for Ohio's Good Neighbor SIP, a May 2, 2020 deadline for Indiana's Good Neighbor SIP, a July 9, 2020 deadline for Kentucky's Good Neighbor SIP, and a September 8, 2020 deadline for Michigan's Good Neighbor SIP.

70.     EPA did not make the required determinations approving or disapproving each of the Upwind States' Good Neighbor SIPs by these statutory deadlines, and to date, has not made such determinations.

71.     Therefore, EPA has not made the required determinations approving or disapproving each of these Good Neighbor SIPs within 12 months of their being determined or deemed complete, 42 U.S.C. § 7410(k)(2) & (3), and its failure is ongoing. EPA is thus in violation of the Clean Air Act for its failure to perform those

mandatory, nondiscretionary duties with respect to the SIPs submitted by the Upwind States.

72.    EPA's failure to timely approve or disapprove Good Neighbor SIPs submitted by the Upwind States and determined or deemed complete more than 12 months ago constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" under 42 U.S.C. § 7604(a)(2).

73.    EPA's ongoing failure to timely approve or disapprove Good Neighbor SIPs submitted by the Upwind States and determined or deemed complete more than 12 months ago has harmed and continues to harm the Plaintiff States by delaying implementation of measures necessary to reduce the interstate transport of air pollution from each of the Upwind States. Each of the Upwind States significantly contributes to nonattainment of the 2015 ozone NAAQS, and/or interference with maintenance of the same, in one or more of Plaintiff States, to the detriment of the health and welfare of our residents, environment, economy, and property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff States respectfully request that this Court enter judgment:

1.    Declaring that EPA is in violation of sections 110(k)(2) and (3), 42 U.S.C. § 7410(k)(2) & (3), by failing to perform its mandatory, nondiscretionary duty to approve or disapprove the Upwind States' SIPs submitted pursuant to the Good

Neighbor Provision, 42 U.S.C. § 7410(a)(2)(D)(i)(I), for the 2015 ozone NAAQS within 12 months of each SIP having been determined or deemed complete;

2.    Enjoining EPA to perform its mandatory duty to approve or disapprove the provisions of each Upwind State's SIP submitted pursuant to the Good Neighbor Provision, 42 U.S.C. § 7410(a)(2)(D)(i)(I), for the 2015 ozone NAAQS by a date certain;

3.    Awarding Plaintiff States their costs of litigation, including reasonable attorneys' fees recoverable under 42 U.S.C. § 7604(d);

4.    Retaining jurisdiction over this matter for purposes of ensuring EPA's compliance with the Court's order; and

5.    Awarding such other and further relief as this Court deems just and proper.

Dated: January 12, 2021                         Respectfully submitted,

                                                FOR THE STATE OF NEW YORK

                                                LETITIA JAMES
                                                *Attorney General of New York*

                                                S/Claiborne E. Walthall[15]
                                                Morgan A. Costello
                                                *Chief, Affirmative Litigation*
                                                Claiborne E. Walthall
                                                *Assistant Attorney General*
                                                New York State
                                                Office of the Attorney General
                                                The Capitol
                                                Albany, NY 12224
                                                (518) 776-2380
                                                Claiborne.Walthall@ag.ny.gov

---

[15] Counsel for the State of New York represents that the other parties listed in the signature blocks on this document consent to this filing.

FOR THE STATE OF CONNECTICUT

WILLIAM TONG
*Attorney General of Connecticut*

S/Jill Lacedonia
Jill Lacedonia
*Assistant Attorney General*
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
Jill.Lacedonia@ct.gov

FOR THE STATE OF DELAWARE

KATHLEEN JENNINGS
*Attorney General of Delaware*

S/Valerie Satterfield Edge
Valerie Satterfield Edge*
Christian Douglas Wright*
*Deputy Attorneys General*
Delaware Department of Justice
102 W. Water Street
Dover, DE 19904
(302) 257-3219
Valerie.Edge@delaware.gov

*Pro Hac Vice applications to be filed*

FOR THE COMMONWEALTH OF
MASSACHUSETTS

MAURA HEALEY
*Attorney General of Massachusetts*

S/David S. Frankel
David S. Frankel
*Special Assistant Attorney General*
Carol Iancu
*Assistant Attorney General*
Environmental Protection Division
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
(617) 963-2294
david.frankel@mass.gov
carol.iancu@mass.gov

FOR THE STATE OF NEW JERSEY

GURBIR S. GREWAL
*Attorney General of New Jersey*

S/Robert Kinney
Robert Kinney
Dan Resler
*Deputy Attorneys General*
Division of Law
25 Market St.
Trenton, NJ 08625-0093
(609) 376-2762
Robert.Kinney@law.njoag.gov
Dan.Resler@law.njoag.gov

FOR THE CITY OF NEW YORK

JAMES E. JOHNSON
*Corporation Counsel of the*
*City of New York*

<u>S/Nathan Taylor</u>
Nathan Taylor
*Assistant Corporation Counsel*
New York City Law Department
100 Church Street, Rm 6-144
New York, NY  10007
(646) 940-0736
NTaylor@law.nyc.gov